**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | |
|---|---|
| DONTE R FRAZIER,<br>Plaintiff,<br>v.<br>ARMANDO CERVANTES,<br>Defendant. | CASE NO. 3:24-CV-945-HAB-SJF |

## OPINION AND ORDER

Donte R. Frazier ("Frazier"), a prisoner without a lawyer, is suing Indiana Department of Corrections ("IDOC") Officer Armando Cervantes ("Defendant") under 42 U.S.C. §1983 for an alleged Eighth Amendment violation. His allegation stems from an incident that occurred on January 18, 2023, in which he was allegedly attacked by another inmate and suffered a broken jaw. He asserts that Defendant ignored credible threats to Frazier's safety and failed to protect him from this harm. Defendant moves for summary judgment, arguing Frazier did not exhaust his remedies prior to filing suit. (ECF No. 29). That motion is now fully briefed and ripe for ruling. (ECF Nos. 32, 37, 39 and 42).

Because the Court agrees that Frazier did not exhaust all administrative remedies available to him, Defendant's motion for summary judgment will be GRANTED.

## FACTUAL BACKGROUND

Frazier is an IDOC offender who, at all relevant times to this lawsuit, was incarcerated at Miami Correctional Facility ("MCF"). (Statement of Material Facts, ECF No. 31, ¶ 1; hereafter "SMF ¶ __). Defendant, at all relevant times, was a corrections officer with the IDOC.

Michael Gapski ("Gapski") is employed by IDOC as the Grievance Specialist at Miami MCF. (Declaration of Michael Gapski, ECF No. 30-1, "Gapski Decl. ¶ 1"). Gapski is familiar with IDOC's policies, rules, and regulations, including IDOC's offender grievance procedures followed at MCF. *Id.* ¶ 2). Gapski also has access to grievance records maintained for each offender, including electronic records maintained in MCF's internal system (DELTA) as well as access to the IDOC's Records Management System ("IRIS"), which contains electronic computer records for each offender in IDOC custody. (*Id.* ¶ 3). According to Gapski, MCF maintains records of inmate's grievance records, including formal grievances, First-Level Appeals, and Second-Level Appeals. (*Id.* ¶ 4).

ISP has in place a Grievance Process available to all inmates at ISP. (SMF, ¶ 4; ECF No. 30-2). The Grievance Process requires an inmate to exhaust three time-sensitive steps before filing a lawsuit: (1) a formal grievance; (2) a written appeal to the Warden/designee ("First-Level Appeal"); and (3) a written appeal to the Department Grievance Manager ("Second-Level Appeal"). (*Id.*) All three must be completed to fully exhaust the available remedies. (SMF, ¶ 8).

To fully exhaust each step of the grievance process, an inmate must first submit "Offender Grievance" State Form 45471[1] within ten business days of the incident giving rise to the complaint. (*Id.* ¶ 9). Upon submission of the grievance form, it is reviewed within ten days and either accepted and logged in, or it is rejected and returned.[2] (*Id.* ¶ 11-14). If the grievance is accepted, it is logged into DELTA, assigned a case number and a receipt is generated and sent to the offender. An

---

[1] Offenders are able to obtain a grievance form from their counselors or by attending the law library. If the facility is on lockdown, offenders can obtain grievance forms from their counselor, unit team staff, or custody staff. (Gapski Decl. ¶ 19).

[2] A grievance may be rejected if it is untimely or does not meet some other requirement. The rejection is logged in DELTA and the inmate receives a Return of Grievance identifying the reasons for its rejection. When this occurs it is the responsibility of the inmate to make any revisions to the grievance form and return it within five business days. (SMF, ¶¶ 14-16).

assigned Grievance Specialist has fifteen business days to investigate and issue a response to the complaining individual. (*Id.* ¶ 22). If the Grievance Specialist fails to respond after twenty business days, the inmate can assume the grievance was denied and proceed to a First-Level Appeal – an appeal to the Warden/designee. (*Id.* ¶ 26).[3]

If the Grievance Specialist timely responds and the inmate seeks to appeal the response, the inmate initiates a First-Level Appeal by filling out State Form 45473, "Grievance Appeal" within five business days after receiving the response. (SMF, ¶ 28-29). Once received, the Grievance Specialist logs the date of receipt and forwards the inmate's appeal to the Warden/designee. (*Id.* ¶ 30).[4] The Warden has ten business days from receipt of the First Level Appeal to complete their response and return it to the inmate. (*Id.* ¶ 31). If the inmate is dissatisfied with the response, the inmate may initiate a Second-Level Appeal by checking the "Disagree" box on the response to the First-Level Appeal and submitting the form along with any additional documentation to the Department Offender Grievance Manager. (*Id.* ¶32) The decision of the Grievance Manager is final and marks the conclusion of the grievance process. (*Id.* ¶ 38).

Frazier alleges that he submitted three grievances related to the January 18, 2023, incident — on January 31, 2023, February 14, 2023, and March 20, 2023.[5] (SMF, ¶¶ 39-40). Frazier's

---

[3] The Offender Grievance Process policy also states that if there is a delay in investigating the offender's grievance issues, the Offender Grievance Specialist may seek approval for a time extension with the request submitted to the Warden/designee. (ECF 15-2, Ex. A-1, P. 12). If the Offender Grievance Specialist receives an extension, then they shall notify the offender of the extension and its length in writing. (*Id.*) In this event, the time to appeal begins on the twenty-first (21st) business day after the grievance was recorded or at the end of extension approved by the Warden/designee. (*Id.*) This time frame may be waived and documented by the Offender Grievance Specialist if it is determined that there are valid reasons to do so. (*Id.*)

[4] The Grievance Specialist also sends the inmate a State Form 56285 "Receipt of Facility Level 1 Grievance Appeal" to inform them that the Warden/designee has received the inmate's appeal. (*Id.*)

[5] In his response brief, Frazier asserts he filed grievances on even more dates about the January 18, 2023, incident. However, all the dates he provides are well after the ten day time frame for timely grievances and, in any event, he has no proof that he actually filed *any* timely grievance related to the incident.

grievance history with MCF does not list any of these alleged grievances as returned or received. (Inmate Grievance Log, ECF No. 30-3). However, during his deposition, Frazier was shown a document that he identified as his March grievance that was attached to his original Complaint in this case. (Compl., ECF No. 1-1).[6] That grievance has not been submitted as part of the MSJ designation and it does not appear on the Inmate Grievance Log. In his deposition, Frazier identified the grievance form and stated that he received a notice that this grievance was untimely. (Frazier Dep. at 10-11). That notice is also not in this record. That said, the earliest recorded grievance in the log for Frazier is May 10, 2024. (SMF, ¶ 43).

Although Frazier alleges that he submitted a January 31, 2023, grievance, he acknowledges that he did not receive a response from the Grievance Specialist, a receipt that the grievance was accepted or a returned grievance. (Deposition of Donte Frazier, ECF No. 30-4, "Frazier Dep. at 11-12). He did not write to the Grievance Specialist to inquire or follow up with the Grievance Specialist in any way. (SMF, ¶¶ 45, 46). Instead, he talked to his counselor about the grievance and claims he was told to "have patience." (Frazier Dep. at 12). Frazier, however, was aware that he had time limitations as part of the Grievance Process. (*Id.* at 12: "But I told the counselor that you only have a certain amount of time to file a grievance and file for an appeal for the grievance, so I can, you know, proceed to the next step."). He asserts that he filed the February 14, 2024, grievance because he did not receive a response to the January grievance but does not provide a

---

[6] Frazier, however, filed an Amended Complaint and did not include the attachment so absent its presence in the original Complaint, this grievance is not part of the record. "An amended pleading supersedes the original." *Pirant v. U.S. Postal Serv.*, 542 F.3d 202, 207 (7th Cir. 2008). As a result, "facts or admissions from an earlier complaint that are not included in a later complaint cannot be considered on a motion to dismiss." *Scott v. Chuhak & Tecson, P.C.*, 725 F.3d 772, 782–83 (7th Cir. 2013). Procedurally, this case is not before the Court on a motion to dismiss but the Court acknowledges that a grievance for March 20, 2024, existed given Frazier's deposition testimony. This fact, however, is immaterial because Frazier also admits that he received a response indicating the grievance was untimely and there is no issue of fact that it was untimely.

copy of that grievance. Simply put, he fails to produce any records nor does he designate any facts to support the notion that he filed this, or any of the other three grievances. *But see* fn. 6.

Based on these facts, Defendant moved for summary judgment.

## **STANDARD OF REVIEW**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions in file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials it its own pleading but must "marshal and present the court with the evidence [they] contend will prove [their] case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th. Cir. 2010).

## **DISCUSSION**

Prisoners are prohibited from bringing an action in federal court with respect to prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). This process allows prison officials an informal way to resolve disputes that incarcerated individuals may have before they are brought in front of a court. This exhaustion requirement "applies to all inmate suits about prison life," including general circumstances and specific occurrences. *Porter v. Nussle,* 534 U.S. 516, 524 (2002). "A suit filed by a prisoner before administrative remedies have been exhausted must be dismissed." *Perez v. Wis. Dep't of Corrs.*, 182 F.3d 532, 535 (7th Cir. 1999). Nevertheless, "failure to exhaust is an affirmative defense that a defendant has the burden of proving." *King v. McCarthy*, 781 F.3d 889, 893 (7th Cir. 2015).

The law takes a "strict compliance approach to exhaustion." *Lockett v. Bonson,* 937 F.3d 1016, 1025 (7th Cir. 2019) (citation omitted). To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require. *Id*. But inmates are only required to exhaust administrative remedies that are made "available" to them. *Woodford v. Ngo*, 548 U.S. 81, 102 (2006). To be sure, a prisoner cannot argue that a remedy is unavailable when the prisoner causes the unavailability of the grievance process by not filing a grievance in a timely manner. *Kaba v. Stepp*, 458 F.3d 678, 684. (7th Cir. 2006). But a prisoner may argue that a remedy is unavailable when a prison official prevents an inmate from properly accessing the administrative remedy and the "on paper" remedy is no longer in reality "available." *Id*.

Defendant's motion seeks summary judgment asserting that none of the three grievances Frazier claims he filed were fully exhausted. The Court agrees and can easily dispense with two of those grievances. Two of Frazier's alleged grievances – the ones in February and March – even if we presume their existence, are untimely under the Grievance Process. Frazier does not argue that they were timely and thus, there is no genuine issue of fact on this question. Therefore, summary judgment is appropriate for the February and March grievances.

This leaves the January 31, 2023, grievance. Defendant argues that even assuming the Grievance was filed, there is no record to support that Frazier exhausted all of his remedies. Frazier counters, without any evidentiary support for the proposition, that MCF operated under a different internal system at the time he filed this grievance and the DELTA system did not operate properly during this time frame. Presumably his argument is that if the Court looked to the prior internal system, evidence would be found there. But that is not the job of this Court; that is the litigants' job in discovery. Given the absence of evidentiary support for this proposition and the lack of any

developed argument by Frazier as to why it is relevant, the Court has nothing to weigh against the submissions from the Defendant.

Frazier also argues that he relied on his counselor's advice to "be patient" and so he did not further inquire of the Grievance Specialist. To the extent Frazier is claiming that the counselor's advice to him made the Grievance Process unavailable to him, that argument falls flat. Frazier's reliance on unsupported hearsay is not sufficient to overcome judgment. He has not identified the counselor to whom he spoke other than to say he "thinks" his last name was Hamerick. He has produced no evidence to support his self-serving deposition testimony that this is what the counselor told him, and his testimony is otherwise prohibited by the hearsay rules. *See Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir.1997) ("[H]earsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial."). Finally, the record is clear that Frazier knew that the Grievance Process required action from him within specific deadlines – he said as much in his deposition – so even if a counselor encouraged patience, there is no suggestion that this encouragement somehow made the Grievance Process unavailable to Frazier. See *King v. Bradford*, No. 3:23-CV-203-JD-AZ, 2026 WL 687189, at *2 (N.D. Ind. Mar. 10, 2026) (summary judgment appropriate where it was undisputed that plaintiff had knowledge of and access to the Offender Grievance Process but never submitted or exhausted any grievance related to his claims).

What remains, then, is an empty record before it. There is no evidence that Frazier filed a grievance on January 31, 2023. No evidence that he attempted the timely invocation of any part of the Grievance Process – be it initially or at some later date. And no evidence that his administrative remedies were in any way unavailable. The record is a canvas left blank, and for this reason, Defendant's Motion for Summary Judgment for failure to exhaust is GRANTED.

## CONCLUSION

Defendant's motion for summary judgment (ECF 29) is GRANTED. The Clerk is directed to enter judgment in favor of the Defendant.

**SO ORDERED** on September 16, 2026.

s/ *Holly A. Brady*
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT